IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARLA ANN STAMPER,**                 Case No. 1:18 CV 697

    Plaintiff,                              Judge Christopher A. Boyko

    v.                                   Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                         **REPORT AND RECOMMENDATION**

### INTRODUCTION

Plaintiff Marla Ann Stamper ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated March 27, 2018). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB in July 2014, alleging a disability onset date of January 17, 2014. (Tr. 196-97). Her claims were denied initially and upon reconsideration. (Tr. 108, 119). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 126). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on March 14, 2017. (Tr. 35-78). On June 26, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 13-28). The Appeals Council denied Plaintiff's request for review, making the

hearing decision the final decision of the Commissioner. (Tr. 1-7); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on March 27, 2018. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Born in 1970, Plaintiff was 43 years old on her alleged onset date. *See* Tr. 27, 196. In a disability report, she alleged disability due to depression, stress, anxiety, and migraines. (Tr. 235). She stated she stopped working due to her conditions in January 2014. *Id.*

Plaintiff testified to migraine headaches four to five times per month, as well as daily headaches. (Tr. 48-49). She also testified daily life was "a struggle" and some days she did not want to get out of bed. (Tr. 49). She avoided crowded places due to anxiety. (Tr. 49-50). She testified to racing thoughts, irritability, and constant worrying. (Tr. 50-51). Plaintiff had tried a "simple data entry" job but stated she could not do it due to nervousness and stress. (Tr. 54-55).

Relevant Medical Evidence[1]

In November 2014, State agency psychologist Michael E. Cremerius, Ph.D., reviewed Plaintiff's records and offered an opinion. (Tr. 85-88). He stated Plaintiff had mild restrictions in activities of daily living and maintaining social functioning; she had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 85). He opined Plaintiff "[w]ould be capable of performing simple, routine tasks in a job with no strict production quotas or fast paced expectations" and should be limited to "[s]uperficial contact with the public." (Tr. 88). He found Plaintiff was "not significantly limited" in her ability to accept instructions and criticism from supervisors, or get along with coworkers. *Id.*

---

1. Because Plaintiff's argument about the medical evidence focuses solely on the ALJ's interpretation and treatment of the state agency consultant opinion evidence, the undersigned summarizes only that evidence here.

2

In April 2015, State agency psychologist Cindy Matyi, Ph.D., reviewed Plaintiff's records and offered an opinion. (Tr. 99-103). She stated Plaintiff had mild restriction of activities of daily living, and moderate difficulties in social functioning and concentration, persistence, or pace. (Tr. 99). She opined Plaintiff was "able to comprehend and remember simple (1-2 step) and occasional complex (3-4 step) instructions." (Tr. 101). Dr. Matyi opined Plaintiff's concentration and pace were "variable" and that "[s]he would need some flexibility in terms of time limits and production standards." (Tr. 102). She thought Plaintiff could "relate adequately on a superficial basis in an environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny." (Tr. 102). Finally, she opined that workplace "[c]hanges should be well-explained and introduced slowly." (Tr. 103).

VE Testimony

At the hearing, the VE testified that an individual of Plaintiff's age, education, experience and RFC could perform work as a linen room attendant, janitor, or housekeeper. (Tr. 73-74). The VE testimony is addressed in more significant detail below with respect to Plaintiff's second argument.

ALJ Decision

In a written decision dated June 26, 2017, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2020 and had not engaged in substantial gainful activity since her alleged onset date of January 17, 2014. (Tr. 15). The ALJ then concluded Plaintiff had severe impairments of major depressive disorder, anxiety, and chronic headaches, but that these impairments – singly or in combination – did not meet or medically equal a listed impairment. (Tr. 15-16). The ALJ found Plaintiff retained the residual functional capacity ("RFC"):

3

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: able to complete simple routine tasks, have no interaction with the public, occasional interaction with coworkers and supervisors, and would need low stress such that there would be occasional changes made and occasional decision making required; would be absent from work one day per month.

(Tr. 19). Based on this RFC, the ALJ found Plaintiff was unable to perform any past relevant work, but – based on the testimony of the vocational expert – Plaintiff could perform other jobs in the national economy such as linen room attendant, janitor, and motel/hotel housekeeper. (Tr. 26-28). Therefore, the ALJ concluded Plaintiff was not disabled. (Tr. 28).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by

4

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises two challenges to the ALJ's decision. First, she contends that the ALJ erred in evaluating the State agency psychologists' opinions. Second, she argues the ALJ's Step Five

determination is unsupported because it is based on equivocal testimony from the VE. The Commissioner responds that the ALJ did not err, and her determination is supported by substantial evidence. For the reasons discussed below, the undersigned recommends the decision of the Commissioner be affirmed.

Opinion Evidence

Plaintiff first argues the ALJ erred in evaluating the State agency consultants' opinions because her findings are internally inconsistent. Specifically, Plaintiff contends that the ALJ stated she gave the opinions partial weight because she believed a more restrictive RFC was necessary, but the ALJ's RFC was not, in fact, more restrictive.[2] The Commissioner responds that: 1) the RFC determination is one reserved for the ALJ, not for a medical source; 2) an ALJ can use a medical opinion without adopting all the limitations opined therein; and 3) the ALJ's RFC was more restrictive in some ways than the State agency opinions.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In formulating an RFC, an ALJ must also consider and weigh medical opinions. 20 C.F.R. § 404.1527. In so doing, the ALJ is to consider the medical specialty of a source, the supportability

---

2. Plaintiff also contends, somewhat confusingly, that "[b]ecause the ALJ failed to properly explain the treatment of the State agency expert opinions, she has violated Social Security Ruling 17-2p[.]." (Doc. 10, at 13). The cited Social Security Ruling, however, addresses medical equivalence, that is, how the Commissioner determines if a person's condition medically equals a listed impairment, even if it does not expressly satisfy each of the listing's requirements. *See* SSR 17-2p, 2017 WL 3928306, at *1 ("This SSR provides guidance about how adjudicators . . . make findings about medical equivalence."). But Plaintiff does not offer a listing argument here and fails to explain the relevance of this ruling.

of the opinion, the consistency of the opinion with a record as a whole, and any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1)(i). However, it must be supported by substantial evidence. In formulating the RFC, the ALJ is not required to adopt any physician's opinion verbatim. 20 C.F.R. § 404.1546(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability."); SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment.").

The Court finds no error in the ALJ's consideration of the State agency consultants' opinions. The ALJ summarized the two opinions and then stated:

> These opinions were based on information contained in the record at the time of the State Agency determinations in this case, and no medical records generated or provided after those dates were considered by the reviewing psychological consultants. However, additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level justifies a conclusion that the claimant's impairments are somewhat more limiting, and justifies the mental limitations set forth in the residual functional capacity set forth above.

(Tr. 22).

Contrary to Plaintiff's argument, the undersigned finds the ALJ did precisely what she said she did. The ALJ's RFC was more restrictive than the consultants' opinions in at least three ways. First, the ALJ limited Plaintiff to "no interaction with the public" (Tr. 19), whereas both State

agency physicians opined Plaintiff could have superficial contact (Tr. 88, 102). Second, the ALJ limited Plaintiff to "simple routine tasks" (Tr. 19) in contrast to Dr. Matyi's opinion that Plaintiff could "occasional[ly] [perform] complex (3-4 step) instructions" (Tr. 101). Third, the ALJ's RFC included a restriction that Plaintiff "would be absent form work one day per month" (Tr. 19), whereas the State agency consultants offered no such restriction, *see* Tr. 85-88, 99-103. Thus, the undersigned agrees with the Commissioner that the ALJ's statement that Plaintiff's impairments were "somewhat more limiting" (Tr. 19) than found by the State agency consultants is not – as Plaintiff contends – "irreconcilabl[y] internal[ly] inconsisten[t]" (Doc. 10, at 11) – but is rather supported by substantial evidence.

Plaintiff also specifically contends that the ALJ's RFC failed to account for Dr. Cremerius's opinion that Plaintiff should have "no strict production quotas or fast paced expectations" (Tr. 88) and Dr. Matyi's opinion that Plaintiff "would need some flexibility in terms of time limits and production standards" (Tr. 102). First, and most importantly, the ALJ is not required to adopt all parts of an opinion, even one to which she assigns great weight. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a State agency psychologist's opinions verbatim; nor is the ALJ required to adopt the State agency psychologist's limitations wholesale."); *Majors v. Colvin,* 2014 WL 1238477, *7 (N.D. Ohio) ("[A]n ALJ is not required to adopt every opinion expressed by a nonexamining medical expert, even when an ALJ overall accords that opinion great weight."). Here, the ALJ assigned Dr. Cremerius's opinion partial weight. (Tr. 22). Second, during the hearing, the ALJ asked the VE a first hypothetical question including a limitation to "low stress" and the two discussed the meaning of the term:

> ALJ: . . . This hypothetical person will need a position that is low stress such that it will provide only occasional changes in the work setting and occasional

8

|      |                                                                                                                                                                                                                                                                                                                                                                                                                              |
|------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      | decision making . . . Can this hypothetical person perform any past work or any other work in the national economy?                                                                                                                                                                                                                                                                                                          |
| VE:  | The past work I do not believe so, Your Honor. The superficial interaction, low stress, occasional changes, occasional decisions and 7% off task, I - - that past work was semi-skilled and skilled. So I do not see this the simple functions of that work. But that also with other work in today's economy the low stress, few details - - was there superficial interaction, low stress attributing is no quotas or no - - |
| ALJ: | That's not no stress means no - - essentially just let me say this. No production rate paced work, no strict quotas.                                                                                                                                                                                                                                                                                                          |
| VE:  | Okay so that's how I interpret that, there's no production rate and no strict quotas.                                                                                                                                                                                                                                                                                                                                        |

(Tr. 63-64). In the hypothetical question that mirrored the ALJ's ultimate RFC, the ALJ used the same terminology: "Low stress such that there are occasional decision making and occasional changes required." (Tr. 73). Because the VE had previously stated that he interpreted "low stress" to mean "no production rate and no strict quotas", the undersigned rejects Plaintiff's contention that the ALJ failed to account for Dr. Cremerius's opinion that Plaintiff should have "no strict production quotas or fast paced expectations" (Tr. 88) or Dr. Matyi's opinion that Plaintiff "would need some flexibility in terms of time limits and production standards" (Tr. 102).

Plaintiff's citation to *Ealy v Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), does not change this analysis. In *Ealy*, the court held that a limitation to "simple, repetitive tasks" was not sufficient to account for the specific pace and speed restrictions from which the claimant suffered. *Id.* at 516. But the *Ealy* hypothetical did not contain a "low stress" limitation as in this case. And, even if "low stress" itself does not necessarily include a restriction on production rate pace or quotas, the VE here testified he interpreted it to in this particular case. *See* Tr. 63-64.

Further, Plaintiff contends the RFC failed to account for the qualitative social limitations opined by the State agency consultants. As noted above, the ALJ limited Plaintiff to "no interaction

9

with the public" (Tr. 19), whereas both State agency physicians opined Plaintiff could have superficial contact (Tr. 88, 102). Dr. Matyi opined Plaintiff was "moderately limited" in her ability to respond to supervision or get along with coworkers, further explaining that she should have "minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny." (Tr. 102).[3] The undersigned finds Dr. Matyi's opinion adequately encompassed by the ALJ's RFC, which limits Plaintiff to "occasional interaction with coworkers and supervisors". (Tr. 19).[4] *See Reeves* 618 F. App'x at 275 (finding ALJ's RFC limiting Plaintiff to occasional interaction with the public not inconsistent with opinion evidence stating Plaintiff was "moderately limited in his ability to interact appropriately" and was "able to relate to a few familiar others on a superficial basis."). Again, "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a State agency psychologist's opinions verbatim; nor is the ALJ required to adopt the State agency psychologist's limitations wholesale." *Id.*

The undersigned therefore finds the ALJ's treatment of the State agency consultants' opinions supported by substantial evidence and recommends the Court affirm that determination.

Step Five

Plaintiff secondly contends the ALJ erred at Step Five. Specifically, she argues the ALJ failed to properly clarify the testimony of the VE regarding the impact of absenteeism on the numbers of jobs available. The Commissioner responds that the Step Five determination is supported by substantial evidence. For the reasons discussed below, the undersigned agrees with the Commissioner.

---

3. Dr. Cremerius opined Plaintiff was not significantly limited in her ability to respond to supervision or get along with coworkers (Tr. 88), whereas the ALJ (more restrictively) found she could do so "occasionally" (Tr. 19).
4. In Social Security parlance, "occasional" means "occurring from very little up to one-third of the time." SSR 83-10, 1993 WL 31251, at *5.

To meet the burden at Step Five, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id*. If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy*, 594 F.3d at 516-17.

Plaintiff argues the VE's testimony in this case regarding absenteeism was "at best equivocal". (Doc. 10, at 15). This is so, she contends, because the VE described potentially punitive actions due to chronic absenteeism. First, when asked a hypothetical ending with: "this person would be absent from work one day per month, can this hypothetical individual perform any work in the national economy assuming that the past work is no longer available?", the VE responded:

> Yes, Your Honor, that one absence per month is going to be - - falls in a separate range in an unskilled or semiskilled work settings in today's economy it's half a day to a day per month for acceptable absenteeism. Employers protect themselves and they're going to send the personal [sic] files a verbal warning, a written reprimand, and discharged from the job or behavior modification in place by the employer . . . . One absence is going to fall from that [sic] in typical economies.

(Tr. 65-66). Plaintiff's attorney, the VE, and the ALJ further discussed about acceptable absenteeism later in the hearing:

> ATTY:     . . . And am I correct then, so and based off your experience it's two days per month absenteeism, and 10% off task or more that's your cutoff?
>
> VE:     It's half a day to a day per month, an acceptable absenteeism in unskilled work settings and then 10 to 12% off task is - - if an individual reaches that consistently then that's - - the employer is

11

|       |   |
|-------|---|
|       | going to - - goes in the personal [sic] files, a verbal warning, reprimanding and lose touch of the job. But they are modifications placed by the employer. |
| ATTY: | . . . [I]s it - - how would you do it per year then. I wasn't sure what - - I don't know what you mean by the half a day to a day. Is it you can miss 12 days per year and be okay or is it 6 days per year? |
| VE:   | Yes. Yes. |
| ATTY: | It's 12? |
| VE:   | Twelve, it's between 6 and 12. It's half a day to a day per month an acceptable absenteeism. |
| ATTY: | Okay, so that's why one day a month was kind of borderline? It would depend on the employer then? |
| VE:   | Exactly. |
| ATTY: | Okay. Because if - - |
| VE:   | I thought it was two days. I went from two days to a day. |
| ATTY: | No, no, no, no yeah I said two days, but the Judge had I thought in one of his hypotheticals, I think it was hypothetical #3, one day per month they would miss. |
| ALJ:  | Is the absence - - yeah it was absenteeism, it was - - they would be absent one day per month. |
| VE:   | Yeah. |
| ALJ:  | And is that acceptable. So if by Mr. Dick's terms, one day per month over the course of a year means twelve days in a year would that be acceptable? |
| VE:   | Absolutely. Yes, it's going to fall in that simple range. |

(Tr. 70-72).

Although the Court has certainly seen clearer VE testimony, the undersigned finds the final exchange between the ALJ and the VE provided the appropriate clarification and substantial evidence for the ALJ's Step Five determination. When asked directly whether one day per month,

12

totaling twelve days per year, was "acceptable" absenteeism in the workplace, the VE responded: "Absolutely." (Tr. 72). Moreover, when subsequently asked a hypothetical question that mirrored the ALJ's ultimate RFC, including the restriction: "And would be absent from work one day per month, can this hypothetical individual perform any past work or any other work in the national economy?", the VE responded: "Yes. I think that was the linen room attendant, the janitor, and housekeeper." (Tr. 73-74).

These jobs were previously identified in response to different hypothetical questions posed by the ALJ:

> ALJ: [T]he hypothetical individual can perform at all exertional levels. The hypothetical individual need[s] changes introduced slowly and to be well explained[,] will need few detail[ed] instructions[,] will be able to interact with the public, coworkers, and supervisors occasionally. Would be off task 7% of the day and would not be able to do production rate paced work Can this hypothetical individual perform any of the past work or any other work in the national economy?
>
> VE: . . . Let's go possibly a **linen room attendant**[,] DOT is going to be 222.387-030. That's an SVP of 2, unskilled, strength level is medium; 39,360 is going to be the national number. . . .
>
> \* \* \*
>
> ALJ: Okay, can you please assume a hypothetical individual of the same age, education background, and work experience as the claimant with the residual functional capacity to perform at all exertional levels . . . except that in addition . . . this hypothetical individual will again need low stress such that there would be only occasional decision making and occasional changes. This hypothetical individual should avoid fluorescent or bright lights. Can this individual perform any past work or any other work in the national economy?
>
> VE: I don't believe so, Your Honor, low stress and changes in terms of lighting, they all [sic] exertional levels. It's at all levels. But that linen room attendant, at an unskilled medium exertional level, that is one alternative that I gave would remain and would be able to be performed in the nation.
>
> \* \* \*
>
> ALJ: The linen room would be able to be performed?

13

>   VE:   Yes.
>
>   ALJ:  Okay.
>
>   VE:   Let's also go **janitor**, DOT is 381.687-018. That's an SVP of 2, unskilled, strength level is medium; 39,330 is the national number. Let's go **motel or hotel housekeeper**, DOT is 323.687-014. That's an SVP of 2, unskilled, strength level is light; 228,260 is going to be the national number.

(Tr. 64-65, 67-68) (emphasis added).

Plaintiff also contends the ALJ erred because while the VE cited the previously-identified jobs, the ALJ "did NOT inquire whether the number of jobs would have been eroded from previous hypothetical questions which were significantly less restrictive, and which did not include a consistent rate of absenteeism." (Doc. 10, at 17). First, the undersigned disagrees that the prior hypothetical questions were necessarily less restrictive. The ALJ's early hypothetical questions included a limitation to being off task 7% of the day, and the second hypothetical question included a limitation on working in an environment with fluorescent lighting. (Tr. 63-64, 67). Neither of these limitations was included in the final hypothetical or the RFC. *See* Tr. 73-74. Second, the VE identified the previously-identified jobs and did not add any comments about erosion from the previously-identified numbers. (Tr. 74). Third, Plaintiff's counsel had the opportunity to cross-examine the VE after his answer. (Tr. 74). Plaintiff's counsel did so, asking questions about tardiness, but did not present any challenge to the jobs identified, the numbers previously-identified, or ask any questions about erosion. *Id.* As other courts in this district have recognized in different, but analogous, circumstances, the failure to cross-examine a VE about a topic at the hearing prevents a claimant from later raising the issue. *See, e.g., Kidd v. Berryhill*, 2018 WL 3040894, at *6 (E.D. Ky.). The *Kidd* court summarized:

>   At the outset (although this is not ultimately dispositive), the Court rejects the claim based on Kidd's "failure to raise this issue during the hearing[.]" *Harris v. Comm'r of Soc. Sec.*, No. 1:11-CV-1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24,

14

> 2012). "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Id.* (citing, *inter alia, Hammond v. Chater*, 116 F.3d 1480, No. 96-3755, 1997 WL 338719, at *3 (6th Cir. June 18, 1997) (table)); *see also, e.g., Lyon v. Comm'r of Soc. Sec.*, No. 1:11-cv-1104, 2013 WL 1149967, at *4 (W.D. Mich. Mar. 19, 2013) (collecting cases for this proposition). A claimant simply "may not now complain" in federal court when he "failed to cross examine" a VE on a topic "when he had an opportunity to do so." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *see also Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (holding Liskowitz "forfeited this argument [regarding a source of VE information] by failing to object to the VE's testimony during the hearing"); *Montano v. Comm'r of Soc. Sec.*, No. 1:13-cv-70, 2014 WL 585363, at *15 (S.D. Ohio Feb. 14, 2014) (negatively noting that "plaintiff's counsel was given the opportunity to cross-examine the VE and did not challenge this [DOT-based] testimony"); *Snow v. Comm'r of Soc. Sec.*, No. 5:14CV1861, 2015 WL 4507271, at *20 (N.D. Ohio July 24, 2015) (criticizing: "Moreover, at the hearing, Snow's counsel did not object to the VE's qualifications when asked and did not object to the VE's numbers or stated reference materials.").

*Id.* The VE here identified three jobs earlier in the hearing, along with attendant numbers. (Tr. 67-68). When Plaintiff's counsel did not challenge those numbers at any time, nor ask about erosion when those jobs were re-cited, the ALJ was entitled to rely on the VE's sufficiently clear testimony as stated.

Because the ALJ's hypothetical questions to the VE contained Plaintiff's exertional and nonexertional limitations, the ALJ could rely on the testimony of the VE for evidence of the existence of a significant number of jobs in the local and national economies that Plaintiff would be able to perform. *See Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994); *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 247 (6th Cir. 1987).

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and recommends the decision be affirmed.

15

 s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).